# Staunton.

## J. T. McConnell v. Lucille McConnell, et als.

### September 23, 1926.

Partition—*Report of Commissioners—Division of Tract into Six Instead of Three Parts as Decreed—Case at Bar.*—In the instant case, a partition suit, the tract in question was subject to a life estate of testator's widow. Suit for partition was instituted by the three devisees and the bill prayed that the tract be divided into three equal parts. The court decreed that commissioners, naming them, go upon the land and divide it into three equal parts. The commissioners went upon the land and divided it not into three, but into six parts. The court overruled the exceptions to the report of the commissioners filed by complainant and confirmed the report by its decree. It appeared that the partition into six parts greatly impaired the value of the land, that the lots assigned complainant were widely separated and that the cost of fencing would be excessive. The motive of the commissioners in dividing the land into six equal parts instead of three was to relieve it equally of the encumbrance of the widow's life estate.

*Held:* That complainant's exception to the report of the commissioners should have been sustained, the report set aside, and commissioners appointed to make partition according to the prayer of the bill and the decree.

Appeal from a decree of the Circuit Court of Scott county, in a partition suit. From the final decree complainant appeals.

*Reversed and remanded.*

The opinion states the case.

*W. S. Cox,* for the appellant.

*S. W. Coleman,* for the appellees.

Chichester, J., delivered the opinion of the court.

J. T. McConnell is here complaining of a final decree entered in this cause on the 6th day of November, 1924, in the Circuit Court of Scott county.

M. J. McConnell died in Scott county sometime in 1917 testate, leaving a widow, Martha C. McConnell, his second wife (by whom he had no children), two sons, J. T. McConnell, Robert F. McConnell, and one daughter, by a former marriage.

By his will he devised to his wife so much of his home tract of land as was necessary for her ample support during her life or so long as she remained his widow.    To J. T. McConnell he devised and bequeathed one-third of his real and personal estate.    To Robert McConnell one-third of his real and personal estate, and one-third of his real estate to the heirs of his daughter, Avy L. Addington.

The testator owned, at the time of his death, three separate boundaries of land, one containing $247\frac{1}{2}$ acres, another containing 100 acres, and the "home place," composed of two adjacent tracts, of 146 and 160 acres respectively.

Suit for partition was instituted by the devisees under the will and the bill alleged and the proof showed that the 100 acre and $247\frac{1}{2}$ acre tracts were not susceptible of partition in kind.    The court decreed sale of these tracts and division of the proceeds, and there is no objection to this decree.

The bill alleged that the "home place" was susceptible of partition in kind, and prayed that it be divided into three equal parts.    The court decreed that commissioners, naming them, go upon the land known as the "home tract" and divide it into three equal parts, having regard to quality, quantity, waters and ways and value, and assign one of the parts to complainant, etc.

The commissioners went upon the land and divided

it, not into three parts, but into six parts, made their report to the court, and the court, after overruling the exceptions to the report filed by J. T. McConnell, confirmed it by decree on November 6, 1924. It was from this decree that the appeal to this court was awarded.

The exceptions filed to the commissioners' report, allege:

1. The report ignores the decree of the court and does not conform to it.

(a) The decree directs the commissioners to partition the land into three equal parts or shares.

(b) The commissioners partitioned the land into six equal parts.

2. The method of partition impairs if it does not destroy the value of the land.

(a) It is cut up into small strips.

(b) These small strips cannot be utilized to any advantage.

(c) Each strip contains land of a different grade and character and cannot be profitably used as a whole.

3. The cost of fencing will be excessive.

(a) It will be out of proportion to the value and character of the land.

4. He is entitled to his share as a whole.

The commissioners gave no reason in their report for ignoring the decree as to the number of parts into which the tract of land was directed to be divided.

There is nothing in the record to support the action of the commissioners in dividing the land as they did, or to support the decree confirming their action. It does appear that the widow has a life estate in one of the tracts forming the "home place" and this seems to have been the basis for the action of the commissioners.

On the other hand, the complainant filed with his exceptions a number of affidavits the purport of all of which may be summarized as follows:

1. The farm as a whole is better adapted to grazing than anything else.   A part of it is well adapted to, and is, and has been, used for general farming purposes.

2. Cutting the land up into six shares does not make any one share large enough to use for both farming and grazing purposes, and renders grazing impracticable.

3. The land is not so located as to give water, except at an almost prohibitive cost, for grazing purposes, when cut up in six shares.   Copper creek touches some of the shares on the south or southeast, but not in a way to furnish water to all of the grazing boundaries.

4. It will cause practically double the amount of fencing.   This is a serious and a costly burden.

5. Rights of ways and water ways will have to be given and these are serious as well as troublesome burdens as well as encumbrances on the land.

6. Separating land into small tracts not adjoining always depreciates the value.   The land is less desirable, as well as less profitable, under such circumstances.

7. The general lay of the land makes such a partition detrimental to the interests of all concerned.   The fact that there is a life estate on part of the land need make no difference.   Complainant agrees to accept his share on the part covered by the life estate and subject to it without considering it or will accept it wherever assigned.

The burden of the life estate is not to be compared with the other burdens—such as fencing, rights of way, inconvenience, the impaired utility, etc.

One of the affidavits filed by complainant was made by one of the Commissioners, W. J. Rollins, in which it it said:   "There are two tracts of the land, but they adjoin and form one boundary.

"On one of these tracts Mrs. McConnell holds a life estate.   On the other there is no encumbrance.   As we

construed the order of the court, we partitioned the land into six equal parts or shares so as to relieve it equally of the encumbrance of the life estate.

"Waiving the life estate, it was my opinion and it is my opinion now that the land should be partitioned into three equal shares for the following reasons:

"1. It would take much less fencing, about one-half as much.

"2. It would put all the land of each share together.

"3. In making the shares larger, it, in my opinion, would make the shares more valuable."

It thus appears that the partition as made greatly impairs the value of the land, that the lots assigned complainant are widely separated, and that upon the record as it stands the exceptions to the report of the commissioners should have been sustained, the report set aside and commissioners appointed to make partition according to the prayer of the bill and the decree of July 31, 1922.

*Reversed and remanded.*